Eastern District of Kentucky
**F I L E D**

JAN 13 2022

AT COVINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

**UNITED STATES OF AMERICA**

**V.**                                       **INDICTMENT NO. 22-4-KKC-MAS**

**ERICA BAKER**

* * * * *

**THE GRAND JURY CHARGES:**

At all times relevant to this Indictment:

## BACKGROUND ON MEDICARE AND MEDICAID

1.      The Medicare Program ("Medicare") was a federal "health care benefit program," as defined by 18 U.S.C. § 24(b), that provided benefits to persons who were over the age of sixty-five or disabled. Medicare was administered by the United States Department of Health and Human Services ("HHS") through its agency, the Centers for Medicare & Medicaid Services ("CMS").

2.      Individuals who qualified for Medicare benefits were commonly referred to as "beneficiaries," and as beneficiaries, they were eligible to receive a variety of goods and services.

3.      The Kentucky Medicaid Program ("Medicaid") was a "health care benefit program," as defined by 18 U.S.C. § 24(b), that provided benefits to Kentucky residents who met certain eligibility requirements, including income requirements. Medicaid was

jointly funded by federal and state sources and administered by CMS and by the Kentucky

Cabinet for Health and Family Services, Department for Medicaid Services ("DMS"),

located in Franklin County, Kentucky.

4.      Individuals who qualified for Medicaid benefits were commonly referred to

as "members," and as members, they were eligible to receive a variety of goods and

services.

5.      Among a variety of items and services, both Medicare and Medicaid

provided coverage to beneficiaries and members for certain laboratory services, including

urine drug testing.

6.      Medical service providers, including diagnostic testing laboratories meeting

certain criteria, could enroll in and obtain Medicare and Medicaid provider numbers. Upon

Medicare and Medicaid enrollment, service providers were permitted to provide medical

services and items to beneficiaries and members, and subsequently submit claims, either

electronically or in hardcopy, to Medicare and Medicaid, through fiscal intermediaries,

seeking reimbursement for the cost of services and items provided.

7.      When seeking reimbursement from Medicare and Medicaid, service

providers certified that: (1) the contents of the claim forms were true, correct, and complete;

(2) the claim forms were prepared in compliance with the laws and regulations governing

Medicare and Medicaid; and (3) the services purportedly provided, as set forth in the claim

forms, were medically necessary.

8.      Medicare and Medicaid reimbursed claims submitted by service providers if

the services and items provided were medically necessary for the diagnoses and treatment

of beneficiaries and members. Conversely, Medicare and Medicaid did not cover and would not reimburse claims for services and items that were not medically necessary.

9. Medicaid regulations provided that a service, including urine drug testing, was medically necessary if, inter alia, it was (a) based on an individualized assessment of the recipient's medical needs; (b) reasonable and required to identify, diagnose, or treat a disease, illness, or other medical condition; (c) appropriate in terms of the service, amount, scope, and duration based on generally accepted standards of good medical practice; and (d) provided for medical reasons rather than primarily for the convenience of the individual, the individual's caregiver, or the health care provider. *See* 907 KAR 3:130, Section 2.

10. Medicaid regulations prohibited reimbursement for laboratory services, including urine drug testing, that were ordered by a court. *See* 907 KAR 1:028, Section 3.

11. DMS contracted with managed care organizations ("MCOs") to administer the Medicaid program in Kentucky, and health care providers must have been credentialed with those MCOs in order to receive reimbursement for the services provided. The MCOs imposed additional coverage requirements prior to reimbursing for urine drug testing. For example, Humana-Caresource's Medicaid reimbursement policy stated that urine drug testing performed pursuant to "blanket orders" or "standing orders" would not be reimbursed, nor would urine drug testing performed as a program requirement to live in a residential facility or sober center. Passport Health Plan's guidance stated that "[s]tanding orders for specific test panels across members, 'routine panels' or 'custom panels' do not meet medical necessity criteria as they are not

individualized to members' specific medical needs." Aetna Better Health of Kentucky's guidance similarly described standing orders for large drug test panels as "medically inappropriate drug testing."

12.     Similarly, Medicare only paid for services that are reasonable and necessary for the diagnosis or treatment of illness or injury. *See* 42 U.S.C. § 1395y(a)(1)(A).  In the context of diagnostic testing, including urine drug testing, the relevant regulations stated that "[a]ll . . . diagnostic laboratory tests . . . must be ordered by the physician who is treating the beneficiary, that is, the physician who furnishes a consultation or treats a beneficiary for a specific medical problem and who uses the results in the management of the beneficiary's specific medical problem.  Tests not ordered by the physician who is treating the beneficiary are not reasonable and necessary." 42 C.F.R. § 410.32(a).  Further, Medicare did not pay for urine drug testing conducted pursuant to blanket orders, that is, a test request that was not for a specific patient, but rather was an identical order for all patients in a clinician's practice without individualized decision making at every visit. *See* Local Coverage Determination L36029.

## DEFENDANT AND RELEVANT ENTITIES

13.     Labtox, LLC ("Labtox") was a diagnostic testing laboratory that performed urine drug testing.  Labtox was located in Fayette County, Kentucky, in the Eastern District of Kentucky, and was enrolled as a medical provider with the Medicare and Medicaid programs.

14.     **ERICA BAKER** was a resident of Jessamine County, in the Eastern District of Kentucky, and an employee of Labtox.  **BAKER's** roles at Labtox included, at various

times, account executive, operations supervisor, director of operations, and compliance officer.

15.     The Hope Center, Friends of Sinners, Hope House, Andrea's Mission, Shepherd's Shelter Ross Rehab, Hickory Hill, Owensboro Regional Recovery, Lighthouse Recovery Services, Liberty Place, St. Benedict's Homeless Shelter, Brighton Center, One Bridge to Hope, and The Way Home were all facilities that offered non-medical addiction recovery services, utilizing peer-to-peer or faith-based recovery models (collectively, the "Non-Medical Recovery Programs").

## THE DEFENDANT'S SCHEME TO DEFRAUD

16.     The Non-Medical Recovery Programs utilized urine drug testing for their clients for non-medical reasons. Such reasons included, for example, ensuring sobriety, which was often a condition of participation or residency in the Non-Medical Recovery Programs, promoting client accountability, and complying with contractual agreements between the Non-Medical Recovery Programs and the Kentucky Department of Corrections. The urine drug testing at the Non-Medical Recovery Programs was not performed for purposes of medical diagnosis and treatment.

17.     **ERICA BAKER** knew that the urine drug testing at the Non-Medical Recovery Programs was not performed for purposes of medical diagnosis and treatment.

18.     **ERICA BAKER** solicited the referral of urine drug testing from the Non-Medical Recovery Programs to Labtox.

19.     **ERICA BAKER** advised the Non-Medical Recovery Programs that in order for Labtox to bill Medicare, Medicaid, and other health care benefit programs for the urine

drug testing referred by the Non-Medical Recovery Programs, Labtox needed a blanket order signed periodically, usually once per quarter, by a physician or nurse practitioner.

20.    **ERICA BAKER** directed the Non-Medical Recovery Programs on how to complete the blanket order form, including the tests to be ordered.  Pursuant to **BAKER'S** direction, the same "Customized High Complexity LC/MS-MS" test was performed on all client urine samples referred to Labtox by the Non-Medical Recovery Programs.

21.    **ERICA BAKER** knew that the physicians and nurse practitioners who signed the blanket order forms were not treating the clients of the Non-Medical Recovery Programs for addiction.

22.    **ERICA BAKER** knew that the physicians and nurse practitioners who signed the blanket order forms were not reviewing the results of the urine drug tests Labtox performed.

23.    The urine drug tests referred by the Non-Medical Recovery Programs were billed to Medicare, Medicaid, and other health care benefit programs, even though **ERICA BAKER** knew that such testing was not performed for purposes of medical diagnosis and treatment and was therefore medically unnecessary.

24.    As a result of Labtox's claims for such medically unnecessary testing, Labtox received in excess of $7.5 million from Medicare, Medicaid, and other health care benefit programs.

## COUNT 1
## Conspiracy to Commit Health Care Fraud
### (18 U.S.C. § 1349)

25.     Paragraphs 1 through 24 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

26.     From on or about an exact date unknown, but at least June 1, 2015, through on or about January 31, 2021, in Fayette County in the Eastern District of Kentucky, and elsewhere,

### ERICA BAKER

did knowingly and willfully, with the intent to further the objects of the conspiracy, combine, conspire, confederate and agree with others, known and unknown to the Grand Jury, to commit the crime of health care fraud, that is, to knowingly and willfully execute a scheme and artifice to defraud health care benefit programs affecting commerce, as defined by Title 18, United States Code, Section 24(b), that is, Medicare, Medicaid, and other health care benefit programs, and to obtain money and property owned by, and under the custody of Medicare, Medicaid, and other health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, by means of false and fraudulent pretenses, in violation of Title 18, United States Code, Section 1347.

27.     It was a purpose of the conspiracy for the Defendant to unlawfully enrich herself, LabTox, and others by causing the submission of false and fraudulent claims to Medicare, Medicaid, and other health care benefit programs for urine drug testing

services referred from Non-Medical Recovery Programs that were medically unnecessary and ineligible for reimbursement.

28.     The manner and means by which the Defendant sought to accomplish the purpose of the conspiracy included, among others, the conduct set forth in Paragraphs 16 through 24 of this Indictment.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
## Health Care Fraud
## (18 U.S.C. § 1347)

29.     Paragraphs 1 through 24 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

30.     The Hope Center operated a Non-Medical Recovery Program in Fayette County, Kentucky. The Hope Center referred urine drug testing to LabTox but did not use the urine drug test results for medical purposes.

31.     C.M. was an on-call nurse practitioner associated with the Hope Center. C.M. did not treat clients of the Hope Center for drug addiction. C.M. did not review the results of the urine drug testing performed by LabTox for the Hope Center.

32.     A.R., J.R., J.C., and others were individuals employed by or working at the Hope Center as social workers and peer counselors, and in that capacity, they were responsible for determining when urine drug testing of Hope Center clients would be conducted. At **ERICA BAKER'S** direction, LabTox hired A.R., J.R., J.C., and others to also work for LabTox as urine collectors. While these urine collectors were nominally

compensated on an hourly basis, in actuality their pay was determined by the number of urine samples they submitted to LabTox.

33.     From on or about an exact date unknown, but at least June 1, 2015, through on or about December 31, 2018, in Fayette County in the Eastern District of Kentucky, and elsewhere,

### ERICA BAKER

knowingly and willfully executed, and attempted to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined by Title 18, United States Code, Section 24(b), that is, Medicare, Medicaid, and other health care benefit programs, and to obtain money and property owned by, and under the custody of Medicare, Medicaid, and other health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, by means of false and fraudulent pretenses.  Specifically, **BAKER** caused claims for payment to be submitted for medically unnecessary urine drug testing referred by the Hope Center, under cover of a blanket order signed periodically by C.M., and performed at Labtox, LLC.

All in violation of Title 18, United States Code, Section 1347.

### COUNT 3
### Health Care Fraud
### (18 U.S.C. § 1347)

34.     Paragraphs 1 through 24 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

35.     Friends of Sinners operated a Non-Medical Recovery Program in Daviess County, Kentucky.  Friends of Sinners referred urine drug testing to LabTox but did not use the urine drug test results for medical purposes.

36.     K.A. was an advanced practice nurse (APRN) at a clinic in Warren County, Kentucky.  K.A. did not treat clients of Friends of Sinners for drug addiction or for any other purpose.  K.A. did not review the results of the urine drug testing performed by LabTox for Friends of Sinners.

37.     From in or around an exact date unknown, but at least January 2016, through in or around October 2019, in Fayette County, in the Eastern District of Kentucky, and elsewhere,

### ERICA BAKER

knowingly and willfully executed, and attempted to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined by Title 18, United States Code, Section 24(b), that is, Medicare, Medicaid, and other health care benefit programs, and to obtain money and property owned by, and under the custody of Medicare, Medicaid, and other health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, by means of false and fraudulent pretenses.  Specifically, **BAKER** caused claims for payment to be submitted for medically unnecessary urine drug testing referred by Friends of Sinners, under cover of a blanket order signed periodically by K.A., and performed at Labtox, LLC.

All in violation of Title 18, United States Code, Section 1347.

## COUNT 4
## Health Care Fraud
## (18 U.S.C. § 1347)

38.     Paragraphs 1 through 24 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

39.     The Hope House operated a Non-Medical Recovery Program in Warren County, Kentucky.  The Hope House referred urine drug testing to LabTox but did not use the urine drug test results for medical purposes.

40.     K.A. was an APRN at a clinic in Warren County, Kentucky.  K.A. did not treat clients of The Hope House for drug addiction or for any other purpose.  K.A. did not review the results of the urine drug testing performed by LabTox for The Hope House.

41.     From in or around an exact date unknown, but at least December 2015, through at least April 2020, in Fayette County, in the Eastern District of Kentucky, and elsewhere,

**ERICA BAKER**

knowingly and willfully executed, and attempted to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined by Title 18, United States Code, Section 24(b), that is, Medicare, Medicaid, and other health care benefit programs, and to obtain money and property owned by, and under the custody of Medicare, Medicaid, and other health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, by means of false and fraudulent pretenses.  Specifically, **BAKER** caused claims for payment to be submitted for medically unnecessary urine drug testing referred by The Hope House,

under cover of a blanket order signed periodically by K.A., and performed at Labtox, LLC.

All in violation of Title 18, United States Code, Section 1347.

### COUNT 5
### Health Care Fraud
### (18 U.S.C. § 1347)

42.     Paragraphs 1 through 24 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

43.     Andrea's Mission operated a Non-Medical Recovery Program in Butler County, Kentucky.  Andrea's Mission referred urine drug testing to LabTox but did not use the urine drug test results for medical purposes.

44.     D.C. was an APRN at a clinic in Butler County, Kentucky.  D.C. did not treat clients of Andrea's Mission for drug addiction.  D.C. did not review the results of the urine drug testing performed by LabTox for Andrea's Mission.

45.     From in or around an exact date unknown, but at least July 2015, through in or around May 2019, in Fayette County, in the Eastern District of Kentucky, and elsewhere,

**ERICA BAKER**

knowingly and willfully executed, and attempted to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined by Title 18, United States Code, Section 24(b), that is, Medicare, Medicaid, and other health care benefit programs, and to obtain money and property owned by, and under the custody of Medicare, Medicaid, and other health care benefit programs, in connection with the

delivery of and payment for health care benefits, items, and services, by means of false and fraudulent pretenses. Specifically, **BAKER** caused claims for payment to be submitted for medically unnecessary urine drug testing referred by Andrea's Mission, under cover of a blanket order signed periodically by D.C., and performed at Labtox, LLC.

All in violation of Title 18, United States Code, Section 1347.

## COUNT 6
## Health Care Fraud
## (18 U.S.C. § 1347)

46.     Paragraphs 1 through 24 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

47.     Shepherd's Shelter Ross Rehab operated a Non-Medical Recovery Program in Montgomery County, Kentucky. Shepherd's Shelter Ross Rehab referred urine drug testing to LabTox but did not use the urine drug test results for medical purposes.

48.     B.P. was a nurse practitioner at a clinic in Montgomery County, Kentucky. B.P. did not treat clients of Shepherd's Shelter Ross Rehab for drug addiction. B.P. did not review the results of the urine drug testing performed by LabTox for Shepherd's Shelter Ross Rehab.

49.     From in or around an exact date unknown, but at least February 2016, through in or around September 2019, in Fayette County, in the Eastern District of Kentucky, and elsewhere,

**ERICA BAKER**

knowingly and willfully executed, and attempted to execute, a scheme and artifice to

defraud health care benefit programs affecting commerce, as defined by Title 18, United

States Code, Section 24(b), that is, Medicare, Medicaid, and other health care benefit

programs, and to obtain money and property owned by, and under the custody of

Medicare, Medicaid, and other health care benefit programs, in connection with the

delivery of and payment for health care benefits, items, and services, by means of false

and fraudulent pretenses.  Specifically, **BAKER** caused claims for payment to be

submitted for medically unnecessary urine drug testing referred by Shepherd's Shelter

Ross Rehab, under cover of a blanket order signed periodically by B.P., and performed at

Labtox, LLC.

All in violation of Title 18, United States Code, Section 1347.

### COUNT 7
### Health Care Fraud
### (18 U.S.C. § 1347)

50.     Paragraphs 1 through 24 of this Indictment are realleged and incorporated

by reference as though fully set forth herein.

51.     Hickory Hill operated a Non-Medical Recovery Program in Knott County,

Kentucky.  Hickory Hill referred urine drug testing to LabTox but did not use the urine

drug test results for medical purposes.

52.     L.C. and M.J. were APRNs at a clinic in Knott County, Kentucky.  L.C. did

not treat clients of Hickory Hill for drug addiction.  M.J. administered Vivitrol to some

Hickory Hill clients as part of her practice at the Knott County clinic.  Neither L.C. nor

M.J. reviewed or used the results of the urine drug testing performed by LabTox for Hickory Hill.

53.     From in or around an exact date unknown, but at least December 2014, through in or around August 2017, in Fayette County, in the Eastern District of Kentucky, and elsewhere,

## ERICA BAKER

knowingly and willfully executed, and attempted to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined by Title 18, United States Code, Section 24(b), that is, Medicare, Medicaid, and other health care benefit programs, and to obtain money and property owned by, and under the custody of Medicare, Medicaid, and other health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, by means of false and fraudulent pretenses.  Specifically, **BAKER** caused claims for payment to be submitted for medically unnecessary urine drug testing referred by Hickory Hill, under cover of blanket orders signed periodically by L.C. and M.J., and performed at Labtox, LLC.

All in violation of Title 18, United States Code, Section 1347.

## COUNT 8
## Health Care Fraud
## (18 U.S.C. § 1347)

54.     Paragraphs 1 through 24 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

55.     Owensboro Regional Recovery operated a Non-Medical Recovery Program in Daviess County, Kentucky.  Owensboro Regional Recovery referred urine drug testing to LabTox but did not use the urine drug test results for medical purposes.

56.     B.E. was a semi-retired physician in Daviess County, Kentucky.  B.E. did not treat clients of Owensboro Regional Recovery for drug addiction or for any other purpose.  B.E. did not review the results of the urine drug testing performed by LabTox for Owensboro Regional Recovery.

57.     R.M. was a nurse practitioner at a clinic in Daviess County, Kentucky. R.M. did not treat clients of Owensboro Regional Recovery for drug addiction.  R.M. did not review the results of the urine drug testing performed by LabTox for Owensboro Regional Recovery.

58.     From in or around an exact date unknown, but at least July 2015, through in or around October 2019, in Fayette County, in the Eastern District of Kentucky, and elsewhere,

### ERICA BAKER

knowingly and willfully executed, and attempted to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined by Title 18, United States Code, Section 24(b), that is, Medicare, Medicaid, and other health care benefit programs, and to obtain money and property owned by, and under the custody of Medicare, Medicaid, and other health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, by means of false and fraudulent pretenses.  Specifically, **BAKER** caused claims for payment to be

submitted for medically unnecessary urine drug testing referred by Owensboro Regional Recovery, under cover of blanket orders signed periodically by B.E. and R.M., and performed at Labtox, LLC.

All in violation of Title 18, United States Code, Section 1347.

## COUNT 9
## Health Care Fraud
## (18 U.S.C. § 1347)

59.     Paragraph 1 through 24 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

60.     Lighthouse Recovery Services operated a Non-Medical Recovery Program in Daviess County, Kentucky.  Lighthouse Recovery Services referred urine drug testing to LabTox but did not use the urine drug test results for medical purposes.

61.     B.E. was a semi-retired physician in Daviess County, Kentucky.  B.E. did not treat clients of Lighthouse Recovery Services for drug addiction or for any other purpose.  B.E. did not review the results of the urine drug testing performed by LabTox for Lighthouse Recovery Services.

62.     At **ERICA BAKER'S** direction, LabTox employed the director of Lighthouse Recovery Services as a urine collector.

63.     From in or around an exact date unknown, but at least 2015, through in or around June 2020, in Fayette County, in the Eastern District of Kentucky, and elsewhere,

### ERICA BAKER

knowingly and willfully executed, and attempted to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined by Title 18, United

States Code, Section 24(b), that is, Medicare, Medicaid, and other health care benefit programs, and to obtain money and property owned by, and under the custody of Medicare, Medicaid, and other health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, by means of false and fraudulent pretenses. Specifically, **BAKER** caused claims for payment to be submitted for medically unnecessary urine drug testing referred by Lighthouse Recovery Services, under cover of blanket orders signed periodically by B.E., and performed at Labtox, LLC.

All in violation of Title 18, United States Code, Section 1347.

### COUNT 10
### Health Care Fraud
### (18 U.S.C. § 1347)

64.     Paragraphs 1 through 24 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

65.     Liberty Place operated a Non-Medical Recovery Program in Madison County, Kentucky. Liberty Place referred urine drug testing to LabTox but did not use the urine drug test results for medical purposes.

66.     L.F. was a physician practicing at a clinic in Powell County, Kentucky. M.K. was an APRN at the same clinic in Powell County, Kentucky. L.F. and M.K. did not treat clients of Liberty Place for drug addiction. L.F. and M.K. did not review the results of the urine drug testing performed by LabTox for Liberty Place.

67.    From in or around an exact date unknown, but at least June 2016, through in or around September 2020, in Fayette County, in the Eastern District of Kentucky, and elsewhere,

**ERICA BAKER**

knowingly and willfully executed, and attempted to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined by Title 18, United States Code, Section 24(b), that is, Medicare, Medicaid, and other health care benefit programs, and to obtain money and property owned by, and under the custody of Medicare, Medicaid, and other health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, by means of false and fraudulent pretenses.  Specifically, **BAKER** caused claims for payment to be submitted for medically unnecessary urine drug testing referred by Liberty Place, under cover of blanket orders signed periodically by L.F. and M.K., and performed at Labtox, LLC.

All in violation of Title 18, United States Code, Section 1347.

### COUNT 11
### Health Care Fraud
### (18 U.S.C. § 1347)

68.    Paragraphs 1 through 24 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

69.    St. Benedict's Homeless Shelter operated a Non-Medical Recovery Program in Daviess County, Kentucky.  St. Benedict's Homeless Shelter referred urine drug testing to LabTox but did not use the urine drug test results for medical purposes.

70.     J.L. was a physician in Daviess County, Kentucky. J.L served on the board of directors for St. Benedict's Homeless Shelter, but J.L. did not treat clients of Liberty Place for drug addiction or for any other purpose. J.L. did not review the results of the urine drug testing performed by LabTox for St. Benedict's Homeless Shelter.

71.     From in or around an exact date unknown, but at least December 2016, through in or around October 2019, in Fayette County, in the Eastern District of Kentucky, and elsewhere,

## ERICA BAKER

knowingly and willfully executed, and attempted to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined by Title 18, United States Code, Section 24(b), that is, Medicare, Medicaid, and other health care benefit programs, and to obtain money and property owned by, and under the custody of Medicare, Medicaid, and other health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, by means of false and fraudulent pretenses. Specifically, **BAKER** caused claims for payment to be submitted for medically unnecessary urine drug testing referred by St. Benedict's Homeless Shelter, under cover of blanket orders signed periodically by J.L., and performed at Labtox, LLC.

All in violation of Title 18, United States Code, Section 1347.

## COUNT 12
## Health Care Fraud
## (18 U.S.C. § 1347)

72.     Paragraphs 1 through 24 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

73.     Brighton Center operated a Non-Medical Recovery Program in Boone County, Kentucky.  Brighton Center referred urine drug testing to LabTox but did not use the urine drug test results for medical purposes.

74.     J.Z. was an APRN associated with a clinic in Campbell County, Kentucky. J.Z. did not treat clients of Brighton Center for drug addiction.  J.Z. did not review the results of the urine drug testing performed by LabTox for Brighton Center.

75.     From in or around an exact date unknown, but at least September 2015, through in or around July 31, 2016, in Fayette County, in the Eastern District of Kentucky, and elsewhere,

### ERICA BAKER

knowingly and willfully executed, and attempted to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined by Title 18, United States Code, Section 24(b), that is, Medicare, Medicaid, and other health care benefit programs, and to obtain money and property owned by, and under the custody of Medicare, Medicaid, and other health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, by means of false and fraudulent pretenses.  Specifically, **BAKER** caused claims for payment to be

submitted for medically unnecessary urine drug testing referred by Brighton Center,

under cover of blanket orders signed periodically by J.Z., and performed at Labtox, LLC.

All in violation of Title 18, United States Code, Section 1347.

## COUNT 13
## Health Care Fraud
## (18 U.S.C. § 1347)

76.     Paragraphs 1 through 24 of this Indictment are realleged and incorporated

by reference as though fully set forth herein.

77.     One Bridge to Hope operated a Non-Medical Recovery Program in

Washington County, Kentucky.  One Bridge to Hope referred urine drug testing to

LabTox but did not use the urine drug test results for medical purposes.

78.     K.M. was an APRN practicing in Taylor County, Kentucky.  K.M. did not

treat clients of One Bridge to Hope for drug addiction.  K.M. did not review the results of

the urine drug testing performed by LabTox for One Bridge to Hope.

79.     From in or around an exact date unknown, but at least July 2019, through in

or around September 2020, in Fayette County, in the Eastern District of Kentucky, and

elsewhere,

### ERICA BAKER

knowingly and willfully executed, and attempted to execute, a scheme and artifice to

defraud health care benefit programs affecting commerce, as defined by Title 18, United

States Code, Section 24(b), that is, Medicare, Medicaid, and other health care benefit

programs, and to obtain money and property owned by, and under the custody of

Medicare, Medicaid, and other health care benefit programs, in connection with the

delivery of and payment for health care benefits, items, and services, by means of false and fraudulent pretenses. Specifically, **BAKER** caused claims for payment to be submitted for medically unnecessary urine drug testing referred by One Bridge to Hope, under cover of blanket orders signed periodically by K.M., and performed at Labtox, LLC.

All in violation of Title 18, United States Code, Section 1347.

## COUNT 14
### Health Care Fraud
### (18 U.S.C. § 1347)

80.     Paragraphs 1 through 24 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

81.     The Way Home operated a Non-Medical Recovery Program in Washington County, Kentucky. The Way Home referred urine drug testing to LabTox but did not use the urine drug test results for medical purposes.

82.     T.M. was an APRN practicing in Fayette County, Kentucky, and the wife of the director of The Way Home. T.M. did not treat clients of The Way Home for drug addiction or for any other purpose. T.M. did not review the results of the urine drug testing performed by LabTox for The Way Home.

83.     From in or around an exact date unknown, but at least October 2017, through in or around July 2019, in Fayette County, in the Eastern District of Kentucky, and elsewhere,

**ERICA BAKER**

knowingly and willfully executed, and attempted to execute, a scheme and artifice to

defraud health care benefit programs affecting commerce, as defined by Title 18, United

States Code, Section 24(b), that is, Medicare, Medicaid, and other health care benefit

programs, and to obtain money and property owned by, and under the custody of

Medicare, Medicaid, and other health care benefit programs, in connection with the

delivery of and payment for health care benefits, items, and services, by means of false

and fraudulent pretenses.  Specifically, **BAKER** caused claims for payment to be

submitted for medically unnecessary urine drug testing referred by The Way Home,

under cover of blanket orders signed periodically by T.M., and performed at Labtox,

LLC.

All in violation of Title 18, United States Code, Section 1347.

## COUNT 15
### Health Care Fraud
### (18 U.S.C. § 1347)

84.     Paragraphs 1 through 14 of this Indictment are realleged and incorporated

by reference as though fully set forth herein.

85.     Beginning in or around June 2019, the Kentucky Cabinet for Health and

Family Services, Department of Community Based Services (DCBS) contracted with

Blue Waters Assessment & Testing Services ("Blue Waters") to conduct court-ordered

urine drug testing.  DCBS referred individuals to Blue Waters for testing for non-medical

reasons.  Blue Waters charged DCBS $20 per test and provided DCBS workers with

online access to test results, which could be used in court proceedings.

86.    Blue Waters needed a toxicology lab to conduct the testing referred to it by DCBS. Blue Waters' owner, D.W., met with **ERICA BAKER**, and explained to **BAKER** the purpose of the court-ordered urine drug testing referred by DCBS. **BAKER** solicited D.W. to refer this urine drug testing to LabTox. **BAKER** falsely advised D.W. that LabTox could bill this urine drug testing to health care benefit programs if it had a blanket order for the testing signed by a physician. **BAKER** represented that neither Blue Waters nor the individuals referred by DCBS for testing would be charged by LabTox.

87.    Medicaid regulations prohibited reimbursement for court-ordered urine drug testing. *See* 907 KAR 1:028, Section 3.

88.    O.J. was a physician practicing in Fayette County, Kentucky. D.W. paid O.J. $1,000 per month in exchange for his signature on a blanket order for urine drug testing to be performed by LabTox. O.J. did not select the tests to be performed. O.J. did not have a doctor-patient relationship with any of the individuals referred to Blue Waters by DCBS for drug testing. O.J. did not review the results of the tests.

89.    Per D.W.'s and **ERICA BAKER's** agreement, urine specimens collected at Blue Waters from individuals referred to it for court-ordered drug testing were sent to LabTox for testing.

90.    LabTox billed Medicare, Medicaid, and other health care benefit programs for the urine drug testing conducted on specimens referred by Blue Waters, under cover of a blanket order periodically signed by O.J. As a result, LabTox received in excess of $1.3 million from those health care benefit programs.

91.     From in or around June 2019, through in or around March 2021, in Fayette County in the Eastern District of Kentucky, and elsewhere,

**ERICA BAKER**

knowingly and willfully executed, and attempted to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined by Title 18, United States Code, Section 24(b), that is, Medicare, Medicaid, and other health care benefit programs, and to obtain money and property owned by, and under the custody of Medicare, Medicaid, and other health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, by means of false and fraudulent pretenses.  Specifically, **BAKER** caused claims for payment to be submitted for medically unnecessary, court-ordered urine drug testing referred by Blue Waters, under cover of blanket orders signed periodically by O.J., and performed at Labtox, LLC.

All in violation of Title 18, United States Code, Section 1347.

## FORFEITURE ALLEGATIONS
### 18 U.S.C. § 982(a)(7)
### 18 U.S.C. § 981(a)(1)(C)
### 28 U.S.C. § 2461(c)

1.     Upon conviction of the offenses set forth in this Indictment, the Defendant, **ERICA BAKER**, shall forfeit to the United States pursuant to 18 U.S.C. § 982(a)(7), 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461(c), all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds of the violations,

including but not limited to a sum of money equal to the amount of gross proceeds of the offenses.

2.     The property to be forfeited includes, but is not limited to, the following:

**MONEY JUDGMENT:**

A sum representing the gross proceeds in aggregate obtained by the Defendant as a result of the violations alleged in the Indictment.

3.     If any of the above-described forfeitable property, as a result of any act or omission of the Defendant:

      a.   cannot be located upon the exercise of due diligence;

      b.   has been transferred or sold to, or deposited with, a third party;

      c.   has been placed beyond the jurisdiction of the court;

      d.   has been substantially diminished in value; or

      e.   has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b), to seek forfeiture of any other property of the Defendants up to the value of the forfeitable property described above.

**A TRUE BILL**

CARLTON S. SHIER, IV
UNITED STATES ATTORNEY

## <u>PENALTIES</u>

**COUNTS 1-15:**   Not more than 10 years imprisonment, a fine of not more than $250,000 or the greater of twice the gross gain or twice the gross loss, and supervised release of not more than 3 years.

**PLUS:**   Mandatory special assessment of $100 per count.

**PLUS:**   Restitution, if applicable.

**PLUS:**   Forfeiture as listed.